**SIGNED THIS: October 30, 2015**

 

_____
**Mary P. Gorman
United States Chief Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re ) | |
| ) | Case No. 14-72070 |
| KENNETH GENE HART and ) | |
| SHELLY JEAN HARRISON-HART, ) | Chapter 13 |
| ) | |
| Debtors. ) | |

# O P I N I O N

Before the Court is an Application for Compensation and Reimbursement Pursuant to 11 U.S.C. §330 ("Application") filed by Attorney Jill M. Arnold on behalf of her firm, Ostling & Associates, Ltd., seeking an award of fees for representing the Debtors in this Chapter 13 case. The Application requests approval of attorney fees of $1312.50, of which $1000 has been previously paid.

For the reasons set forth herein, the Application will be allowed in the amount of $350 and denied in all other respects.

## I. Factual and Procedural Background

According to an itemization attached to the Application, Kenneth Gene Hart and Shelly Jean Harrison-Hart ("Debtors") met with Attorney Lars Eric Ostling of Ostling & Associates, Ltd. ("the Ostling firm") on October 8, 2014, to discuss the possibility of filing bankruptcy.[1] Mr. Ostling met with the Debtors again on October 17th and October 23rd, and then again on November 1st "to sign rough draft of Petition." Ms. Arnold met with the Debtors on November 6th and then again on November 14th "to sign Petition." The Debtors' Chapter 13 case was filed on November 24, 2014.[2] Among the documents filed with the petition was a Disclosure of Compensation of Attorney for Debtor(s) wherein Ms. Arnold reported that she had agreed to accept the "no-look" Chapter 13 fee of $3500. Ms. Arnold stated in the Application that the fee was agreed upon in writing between the Ostling firm and the Debtors, and that a copy of the agreement was attached as Exhibit D to the Application.[3]

---

[1] Mr. Ostling is referred to in the attachments to the Application as Eric Ostling, Eric L. Ostling, "EO," and "LEO." Mr. Ostling is registered with this Court and with the Illinois Attorney Registration and Disciplinary Commission as "Lars Eric Ostling."

[2] On page two of the Application, Ms. Arnold states that the petition was filed on November 24, 2015. Obviously this statement is in error.

[3] The purported agreement was not attached to the Application. The Application contains no Exhibit D.

At paragraph 3(c) of the Debtors' Statement of Financial Affairs ("SOFA"), which requires debtors to list all payments made within one year immediately preceding the commencement of the case to or for the benefit of creditors who are or were insiders, the Debtors disclosed that they had paid a friend, Angie Thorp, $700 in August 2014 and that Ms. Thorp was still owed $980. They also disclosed that they had paid another friend, Penny Wilson, $650 in September 2014 and that Ms. Wilson was still owed $340. Neither Ms. Thorp nor Ms. Wilson was listed as a creditor on the Debtors' Schedule F.

Mr. Ostling attended the first meeting of creditors on January 9, 2015, with the Debtors. The Chapter 13 Trustee's Confirmation Report states, *inter alia*, "28 days for Amended SOFA and Amended Schedule F" and the Application states that it was determined at the time of the first meeting that the Debtors' two friends along with Mrs. Hart's father — also a creditor — were not listed on Schedule F and that an amendment was necessary to add the three omitted creditors. It was also determined that an Amended SOFA was needed in order to disclose a pre-petition payment to Mrs. Hart's father.

On February 23, 2015, Ms. Arnold filed an Amended SOFA which added Mrs. Hart's father, Ronald Williams, at Paragraph 3(c) and identified him as having been paid $200 "weekly" with the sum of $1000 still owing. A First Amended Chapter 13 Plan was filed the following day. The Trustee filed an Objection to the First Amended Plan wherein he stated, *inter alia*, that an Amended Schedule F had not been filed despite the fact that Angie Thorp, Penny

Wilson, and Ronald Williams were still shown on the Amended SOFA as being owed money.

      A hearing on the First Amended Plan was held on April 7, 2015. Ms. Arnold appeared on behalf of the Debtors and stated that the Ostling firm had been back and forth with the Debtors trying to get information to file another amended SOFA and Schedule F pursuant to the Trustee's request. She said that the Ostling firm had been given conflicting information by the Debtors and they were now being told that the omitted creditors were not creditors at all because they had all been paid in full before the case was filed, even though the Debtors originally stated — and either confirmed or did not deny at the first meeting of creditors — that the debts were still owed, at least in part, at the time of filing. Ms. Arnold further stated that the Ostling firm had been given signed statements by the omitted creditors that they had been paid in full before filing, that the Ostling firm had been talking to the Debtors on a weekly basis in order to obtain further "clarification," and that they would be filing the amendments "to make sure that's correct."

      Counsel for the Trustee stated that all of the back and forth between the Debtors and their counsel had been disclosed to him just prior to the hearing. He said that whatever the case was, he was concerned that the Debtors made certain representations in their SOFA, yet made no mention at the first meeting that the representations were not accurate or that the omitted creditors had been paid in full. He further explained that it was problematic if the Debtors were not willing

to sign and file an accurate Amended Schedule F, but even if the Debtors were willing to sign and file an Amended Schedule F at that point, he was still concerned because the claims bar date was set to run within days.

The Court expressed concern that the Debtors represented that they owed money to the omitted creditors — obviously disclosing the debts to their attorneys as evidenced by the original SOFA — but somehow the creditors were not listed on Schedule F, and that an Amended Schedule F had yet to be filed. Ms. Arnold stated that she simply failed to catch the omission and that it was "an honest mistake." The Court also voiced concern about the perfunctory nature of the work being done by attorneys at the Ostling firm at the front end of cases and the fact that errors such as those that had occurred here continue to be an ongoing problem with the Ostling firm.

The Court questioned why the Amended Schedule F was not filed on a timely basis after the first meeting on January 9th, and expressed frustration that the problems were so obvious that the Trustee was able to readily identify discrepancies in the SOFA and schedules, yet the Debtors' counsel had not identified the same discrepancies when preparing the documents. Ms. Arnold offered little by way of explanation or excuse. Notwithstanding how much time had passed, the Court allowed an additional twenty-one days for the filing of another amended plan. The Court stated, however, that the routine no-look fee would not be awarded in this case, and an itemization would be required. The Court stated specifically that an itemization should be submitted only if it were based upon

contemporaneously-kept time records.

On April 28, 2015, the Debtors filed a Second Amended Plan. On May 15, 2015, the Trustee filed another objection complaining that, in spite of counsel's representation that the three debts had been paid pre-petition, that statement was contradicted by the original SOFA, the Amended SOFA, and the Debtors' testimony at the creditors' meeting.

On June 10th, the Debtors finally filed an Amended Schedule F which listed the three previously omitted creditors. A Second Amended SOFA was also filed clarifying that Mr. Williams had been paid weekly for a period of five weeks pre-petition. With the other documents, the Debtors filed a Third Amended Plan which proposed to pay all creditors in full. The Third Amended Plan was confirmed on July 13, 2015.

Ms. Arnold filed the Application on August 13, 2015. The Application seeks fees for 2.3 hours of Mr. Ostling's time and 5.2 hours of Ms. Arnold's time. Both attorneys billed their time at $175 per hour. No paraprofessional fees or costs are being sought. Thus, the total fee sought is 7.5 hours at $175 per hour or $1312.50. In her Application, Ms. Arnold also asserted that the Ostling firm was actually entitled to the full "no-look" fee of $3500, which the Debtors had agreed to pay when they first met with Mr. Ostling.

On September 11, 2015, this Court entered an Order giving Ms. Arnold ten days to file an affidavit stating whether simultaneously-kept time records were maintained and utilized to construct the time itemization included in the

Application. The Order clarified, "simultaneously-kept time records involve each person working on the case to note the amount of time involved in any activity at the same time the activity is undertaken and completed. This is distinct from transactional records which would evidence work completed but would require review and reconstruction of time expended in order to complete the Application."

On September 28, 2015, Ms. Arnold filed her Affidavit in Support of Fee Application wherein she stated that her office keeps contemporaneous transactional records for time purposes in all of its bankruptcy cases "in accordance with the American Bar Association guidelines." Ms. Arnold explained that the contemporaneous transactional records approach is used because the Central District has adopted the no-look fee approach, and only when the Court requests a fee application is the time and effort needed to go through a file and prepare an actual billing. The Court entered an Order on September 28th giving Ms. Arnold seven days in which to file as an exhibit to the Affidavit a copy of the American Bar Association guidelines referenced therein. In response, Ms. Arnold filed only a copy of Rule 1.5 of the Model Rules of Professional Conduct.

No objection to the Application was filed by any party in interest. The matter is ready for decision.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Central District of Illinois

have been referred to the bankruptcy judges. CDIL-LR 4.1; 28 U.S.C. §157(a). The determination of the amount of attorney fees to be paid to Chapter 13 debtors' attorneys through a confirmed plan is a core proceeding. *See* 28 U.S.C. §157(b)(2)(A), (B), (L). The dispute here arises in the bankruptcy case itself and stems from the provisions of the Code. It may therefore be constitutionally decided by a bankruptcy judge. *See Stern v. Marshall*, 131 S. Ct. 2594, 2618 (2011).

### III. Legal Analysis

#### A. Debtors' Attorneys' Conduct Precludes The Awarding of More than a Minimal Fee

On multiple prior occasions, this Court has admonished the Ostling firm and the individual attorneys employed there about their shortcomings in the representation of their debtor clients and about the ethical and professional standards they must adhere to in order to practice competently before this Court and to justify their compensation requests. *See, e.g., In re Carter*, 2014 WL 4802919 (Bankr. C.D. Ill. Sept. 26, 2014); *In re Bergae*, 2014 WL 1419586 (Bankr. C.D. Ill. Apr. 11, 2014); *In re Brennan*, 2013 WL 4046447 (Bankr. C.D. Ill. Aug. 8, 2013); *In re Eskew*, 2012 WL 4866687 (Bankr. C.D. Ill. Oct. 12, 2012). At this point, there can be no doubt that Attorney Ostling and his employees know what they are required to do to competently and professionally represent their debtor clients. Their collective, repeated failures to meet even the minimum standards required, however, can only be seen as an affirmative choice by the attorneys to continue to cut corners despite the Court's repeated admonitions.

Specifically, this Court has admonished the Ostling firm's attorneys that their client meetings must be more than perfunctory. *Brennan*, 2013 WL 4046447, at *9. Their practice of having their untrained, unsupervised clerical staff prepare all documents, with the attorneys then spending, at most, a few minutes with the clients to sign the paperwork, is one cause of the repeated problems. Likewise, this Court has admonished the Ostling firm's attorneys that their review of client information must also be more than perfunctory. *Bergae*, 2014 WL 1419586, at *5. When the attorneys actually review documents, they often fail to compare information on related documents or double check the accuracy of the information provided even when the information on its face appears suspect. *Carter*, 2014 WL 4802919, at *6-7 (zero value listed for commercial building should have raised red flag and caused Ostling firm attorney to make further inquiry). Initial mistakes are often compounded by the failure of the Ostling firm's attorneys to take responsibility for their errors and to promptly file corrected documents. *Id.* at *7.

The Debtors obviously provided Mr. Ostling and Ms. Arnold information about their debts to Ms. Thorp and Ms. Wilson during their initial meetings. The information about both debts appeared on their original SOFA filed with their petition. But, apparently, neither Mr. Ostling nor Ms. Arnold took the time to carefully review the information provided or the final documents prepared by clerical staff and, accordingly, both debts were omitted from the Debtors' Schedule F. It is not disputed that the error was discussed with the Trustee at the creditors' meeting in January 2015, but an Amended Schedule F was not filed until June 2015, long after the claims bar date had passed.

Although Ms. Arnold admitted at an initial hearing that the mistake was hers, in the Application she blames the Debtors, saying that "[u]nfortunately, Debtors failed to list Angie Thorp and Penny Wilson as creditors when filling out the worksheets they had completed for counsel to use when preparing the bankruptcy forms[.]" But that is simply not true. The Debtors did disclose the debts to Ms. Thorp and Ms. Wilson to the Ostling firm. What the Debtors most likely failed to do was list the information both in response to a SOFA question and then again on the actual list of creditors provided to the Ostling firm. Because neither Mr. Ostling nor Ms. Arnold took the time to analyze the information, the debts not listed by the Debtors in exactly the spot on the worksheets where they should have been listed were not included in the final paperwork.

The problems here are remarkably similar to the problems in *Bergae*. In *Bergae*, the debtor disclosed on her SOFA that she had partially paid a debt to her mother before filing and that an amount was still owed on that debt. *Bergae*, 2014 WL 1419586, at *1. Notwithstanding that disclosure, the attorney who filed the case failed to include the debt to the mother on the debtor's schedules. *Id*. An amended schedule listing the mother as a creditor was only filed after multiple court appearances and, just as here, long after the claims bar date had passed. *Id.* at *2. In later seeking compensation for representation of the debtor, Attorney Robert Follmer of the Ostling firm blamed the debtor, claiming that it was her fault that the information about the debt to her mother appeared only on the SOFA and not on the proper schedule. In *Bergae*, this Court rejected that argument, stating that if a debtor was "responsible not only to provide information

about her financial affairs to her attorneys but also to explain to them how to prepare the legal documents, then the attorneys provided no more than a typing service." *Id.* at *5. Ms. Arnold's suggestion that the Debtors here are to blame because information they provided to her was not properly set forth on their bankruptcy documents is equally without merit. In order to justify an award of the $3500 "no-look" fee that the Ostling firm initially claimed in this case, more than a typing service must be provided. Placing blame on the Debtors for how the documents were prepared by the Ostling firm's clerical staff, who apparently copy directly from whatever paperwork debtors provide, is an admission that Ms. Arnold and Mr. Ostling had little or no involvement in the document preparation. That admission justifies denial of a significant portion of the fees requested.

Also troubling is the fact that, despite the Debtors' initial admission that they owed money to Ms. Thorp and Ms. Wilson, Ms. Arnold later told this Court and the Trustee that the Debtors were not cooperating in amending their schedules and then later reported that nothing was actually owed to any omitted creditor. This suggests that the Debtors misrepresented the status of their obligations to the creditors either initially or after the discrepancy in their documents was discovered. And equally troubling is the fact that, in the *Bergae* case, Attorney Follmer made the same representations, first claiming a lack of cooperation from his client and later asserting that no debt was owed. *Id.* at *6. All of the conflicting representations made by Ms. Arnold in this case cannot be true, and her lack of candor with the Court compels a significant reduction in the fees requested.

The practice of Ostling firm attorneys filing petitions, schedules, SOFAs, and other bankruptcy documents with glaring errors must stop. Whenever an attorney signs, files, submits, or later advocates regarding a document filed in a bankruptcy case, the attorney is representing that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the factual information contained in the document has "evidentiary support" and the legal contentions contained in the document "are warranted by existing law." Fed. R. Bankr. P. 9011. The failure to cross check information provided in answer to SOFA questions with information provided for a debtor's schedules does not constitute the type of reasonable inquiry required by Rule 9011. And the failure to question suspicious or obviously inaccurate information also falls well short of the required standard. *Carter*, 2014 WL 4802919, at *6.

Ms. Arnold and Mr. Ostling failed to meet the minimum standards required to practice law before this Court in their handling of this case. No reasonable inquiry — perhaps no inquiry at all — was made into the accuracy of the information provided by the Debtors, and the bankruptcy documents filed by Ms. Arnold for the Debtors contained obvious errors. The initial failures were compounded by an unreasonable delay in correcting the documents and by Ms. Arnold's conflicting representations to the Court and the Trustee about the facts of the case. Although this Court will not issue further sanctions in this case pursuant to Rule 9011, both Ms. Arnold and Mr. Ostling are admonished that sanctions other than the denial of requested fees are available and may be

imposed if conduct of the type exhibited here occurs again. Fed. R. Bankr. P. 9011.

### B. Debtors' Attorneys' Application is Deficient and Provides No Support for the Requested Fees

The Application filed by Ms. Arnold is inadequate to justify the fee award requested. This Court has previously set forth the requirements for fee applications and, in particular, the requirement that such applications be supported by contemporaneously-kept time records. *See, e.g., Carter* 2014 WL 4802919, at *8-11; *Bergae*, 2014 WL 1419586, at *7. And when Ms. Arnold was advised at a hearing on April 7th that the "no-look" fee would not be awarded and a fee application would be required, she was admonished that any application filed should be based on contemporaneously-kept time records. Nevertheless, Ms. Arnold filed the Application here using reconstructed time records and only disclosed that the time itemization attached to the Application was reconstructed after the Court requested her affidavit.

Ms. Arnold filed the Application, citing §330 as support for the requested fee award. 11 U.S.C. §330. But as this Court has pointed out to Ostling firm attorneys on repeated occasions, the first factor listed in §330(a)(3) to be taken into account in awarding fees is "the time spent[.]" 11 U.S.C. §330(a)(3)(A). If Ms. Arnold does not know how much time was spent on the various activities undertaken in this case by herself and others — and she admittedly does not — then she cannot provide the relevant information required by statute to justify a fee award, and all

fees can properly be denied. *See In re Basham*, 208 B.R. 926, 931 (B.A.P. 9th Cir. 1997), *aff'd sub nom In re Byrne*, 152 F.3d 924 (9th Cir. 1998); *In re Newman*, 270 B.R. 845, 847-48 (Bankr. S.D. Ohio 2001).

In *Carter*, Mr. Follmer attempted to justify the Ostling firm's practice of keeping records of the work done by Ostling firm employees and then later creating time records for fee applications by applying minimum time increments for each activity. *Carter*, 2014 WL 4802919, at *9. Mr. Follmer claimed that the Ostling firm's practice of reconstructing time records for fee applications complied with guidelines of the American Bar Association ("ABA") and the Illinois State Bar Association ("ISBA"). *Id.* at *11. But in *Carter*, this Court rejected Mr. Follmer's arguments, pointing out the flaws in the practice and questioning whether reputable groups such as the ABA and ISBA would actually condone the practice of using wholly reconstructed time records for fee applications. *Id.* at *9-11.

Notwithstanding the Court's prior rejection of Mr. Follmer's arguments, Ms. Arnold made the same arguments here and persisted in the assertion that the practice is ABA-sanctioned. When asked to provide a copy of any ABA publication which supported the practice, Ms. Arnold filed only a copy of Rule 1.5 of the Model Rules of Professional Conduct, apparently downloaded from the ABA website. The rule discusses ethical issues regarding fee collection and, just like §330(a)(3), includes time as the first factor to be considered in determining the reasonableness of a proposed fee. But the rule provides absolutely no support for the Ostling firm's practice of not keeping time records as work is performed and later reconstructing the records when a fee application is required. Ms. Arnold's

representation that the Ostling firm's practice was in compliance with ABA guidelines was false and made in an obvious attempt to mislead the Court as to the propriety of the practice.

The District Court of the Central District of Illinois has adopted the Illinois Rules of Professional Conduct to govern attorney conduct in all federal courts in the District. CDIL-LR 83.6(D). Rule 3.3 of the Illinois Rules of Professional Conduct is captioned "Candor Toward The Tribunal" and provides that a lawyer must not knowingly "make a false statement of fact or law to a tribunal[.]" Ill. R. Prof. Conduct R. 3.3(a)(1) (eff. Jan. 1, 2010). As set forth above, Bankruptcy Rule 9011 requires attorneys to make a reasonable inquiry into the facts and the law before signing and filing documents or advocating positions before a court. Fed. R. Bankr. P. 9011. It is difficult to see how Ms. Arnold's representations in the fee application about the reconstructed time records and the existence of ABA guidelines which she alleged supported the practice do not run afoul of both Bankruptcy Rule 9011 and Rule 3.3 of the Illinois Rules of Professional Conduct.

The Application is wholly inadequate to justify the fees requested by Ms. Arnold and the Ostling firm. Ms. Arnold's lack of candor with this Court about the existence of time records and ABA support for the practice of reconstructing time records justifies a significant reduction in the fees requested.

### IV. Conclusion

The problems in this case were caused by the failure of Mr. Ostling and Ms. Arnold to review the information provided to them by the Debtors. They apparently

allowed clerical staff to prepare the bankruptcy documents by copying information directly from the Debtors' worksheets. Because information about two creditors was on the worksheets but was not in exactly the spot staff looks for it, the information was not included on the Debtors' schedules. Ms. Arnold's assertion that the Debtors are to blame for the error shows a lack of understanding of her role as an attorney in the bankruptcy process and of the work which needs to be done by an attorney to justify an award of the full "no-look" fee that Ms. Arnold expected to receive here.

Compounding the problems was the failure of Ms. Arnold to promptly correct the error when it was discovered. It is not disputed that the error was discussed at the creditors' meeting in January 2015. There is simply no excuse for the delay in filing the required amended schedule. Ms. Arnold's conflicting representations about the delay and whether the unscheduled debts actually existed also aggravated the situation. Not all of Ms. Arnold's representations could have been true, but to this day she has not provided a complete explanation for the discrepancies nor taken responsibility for the conflicting information.

This Court cannot force the Ostling firm to keep contemporaneous time records. If such records are not kept, so be it. But the requirements for fee awards are clear — time spent is a relevant factor in determining the reasonableness of any fee. The wholesale reconstruction of time records for a fee application without disclosing that actual records do not exist is just plain wrong. And misrepresenting that reputable bar associations have promulgated guidelines which support such a practice is stunningly wrong.

The Court will award $350 in fees here. That is a minimal fee and represents just a fraction of what Ms. Arnold and the Ostling firm expected to receive. But they have previously received multiple notices that the quality of their work must improve and that their fee applications were inadequate. Obviously, neither Mr. Ostling nor his employees have taken the Court's prior admonitions seriously.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###